COURT OF 
APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-500-CR
  
  
PATRICK TYSONNE WARE                                                     APPELLANT
 
V.
  
THE STATE OF TEXAS                                                                  STATE
  
------------
 
FROM THE 89TH DISTRICT COURT 
OF WICHITA COUNTY
 
------------
 
OPINION
 
------------
        Appellant 
Patrick Tysonne Ware appeals his conviction of capital murder.  We affirm.
Factual and Procedural Background
        At 
approximately 6:00 a.m. on June 10, 2000, Eddie Lee Barry was shot and killed in 
his home by a group of assailants. According to the State, Appellant went with 
Devin Pope, Derick Smith, and Anthony King to Barry’s house with the intent to 
rob him. The State alleged at trial that Pope drove to the Barry home where 
Appellant and King jumped over a fence, burst into the home, and shot and killed 
Barry. Appellant was convicted in December 2002 of capital murder. The trial 
judge sentenced Appellant to life imprisonment and imposed a fine for court 
costs in the amount of $9,161.85.
        On 
January 10, 2003, Appellant filed his second motion for new trial, claiming that 
material evidence favorable to his case was discovered after the trial. This 
evidence was a written statement from Smith asserting that Appellant was not a 
participant in Barry’s murder. The record reflects that Smith entered a plea 
of guilty to a lesser charge for his participation in the murder.
        When 
Appellant’s counsel sought Smith’s testimony at the hearing on the motion 
for new trial, Smith invoked his Fifth Amendment privilege under the advice of 
his attorney. Appellant argued that Smith could be compelled to testify because 
he pled guilty to the offense and waived his rights to appeal. After reviewing 
briefs on the issue from Appellant, Smith, and the State, the trial court ruled 
that Smith could not be compelled to testify after asserting his Fifth Amendment 
right. Smith’s statement was not admitted into evidence, and Appellant’s 
second motion for new trial was denied. Appellant raises two issues on appeal.
Factual Sufficiency
        Appellant 
contends in his first issue that the evidence is factually insufficient to 
support his conviction. In reviewing the factual sufficiency of the evidence to 
support a conviction, we are to view all the evidence in a neutral light, 
favoring neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 
2000); Clewis v. State, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996). 
Evidence is factually insufficient if it is so weak as to be clearly wrong and 
manifestly unjust or the adverse finding is against the great weight and 
preponderance of the available evidence. Johnson, 23 S.W.3d at 11. 
Therefore, we must determine whether a neutral review of all the evidence, both 
for and against the finding, demonstrates that the proof of guilt is so 
obviously weak as to undermine confidence in the verdict, or the proof of guilt, 
although adequate if taken alone, is greatly outweighed by contrary proof. Id. 
In performing this review, we are to give due deference to the fact finder’s 
determinations. Id. at 8-9; Clewis, 922 S.W.2d at 136. We may not 
substitute our judgment for that of the fact finder’s. Johnson, 23 
S.W.3d at 12. Consequently, we may find the evidence factually insufficient only 
where necessary to prevent manifest injustice. Id. at 9, 12; Cain v. 
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).
        To 
make a determination of factual insufficiency, a complete and detailed 
examination of all the relevant evidence is required. Johnson, 23 S.W.3d 
at 12. A proper factual sufficiency review must include a discussion of the most 
important and relevant evidence that supports the appellant’s complaint on 
appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). We 
therefore now turn to a review, in addition to the evidence recited above, of 
the most important and relevant evidence supporting Appellant’s complaint of 
factual insufficiency of the evidence supporting his capital murder conviction.
        Appellant 
contends that the evidence is factually insufficient because the central witness 
in this case, Pope, was also implicated in the murder and has every reason to 
lie. Appellant points out that Pope received a reduced sentence in exchange for 
his testimony at Appellant’s trial and that Pope has a closer friendship with 
the two other men involved in the murder, Smith and King, than he does with 
Appellant.
        The 
State’s first witness at Appellant’s trial was Pope. According to Pope, he 
went with Smith and King to JP’s Lounge, a club in Wichita Falls, to buy some 
marijuana at approximately 3:30 a.m. on June 10, 2000. The group of men ran into 
Appellant at JP’s Lounge and decided they would go find some marijuana. The 
men drove around for a while and decided to rob Barry. Pope stated that Smith 
was armed with a gun and that he also saw Appellant with a gun. Pope drove the 
men to Barry’s house where Appellant, wearing a red pullover with a hood, and 
King got out of the car and jumped Barry’s fence. Appellant then kicked in 
Barry’s door and entered the house. Pope stated that he heard gunshots just 
before Appellant and King ran from the house to the car. Pope testified that 
Appellant had a cut on his hand and that Appellant said he dropped his watch 
when he jumped over Barry’s fence.
        Pope 
drove to the home of his girlfriend, Ramona Houston, and stashed the guns in her 
closet. After dropping Appellant off at a friend’s house, Pope called LaToya 
Smith (“LaToya”) and asked her to come pick him up. LaToya took Pope back to 
Houston’s house to get the guns and then drove him out to the country, where 
he disposed of the guns. Houston called Pope the next day and told him that the 
police had spoken to her. Pope testified that he got scared and left for 
Oklahoma City with LaToya.
        Pope 
was eventually arrested and led the police to the location where the guns were 
hidden. He was sentenced to fifteen years’ imprisonment for aggravated robbery 
in exchange for his testimony and cooperation with the authorities. On cross 
examination, Pope admitted that he was only a casual acquaintance of 
Appellant’s, while King and Smith are his friends. He also testified that he 
was not completely truthful with the police in his early statement about the 
crime and that he was originally charged with murder.
        The 
record reflects sufficient independent corroboration of Pope’s testimony to 
establish that the evidence in this case is factually sufficient to support 
Appellant’s conviction. The test for determining the sufficiency of the 
corroboration is to eliminate the accomplice testimony from consideration and 
then determine if there is any other incriminating evidence which "tends to 
connect" the defendant with the crime. Hernandez v. State, 939 
S.W.2d 173, 176 (Tex. Crim. App. 1997); Reed v. State, 744 S.W.2d 112, 
125 (Tex. Crim. App. 1988).
        Officer 
Buddy Wayne Alexander, a police officer for the City of Wichita Falls, testified 
that a watch was recovered at the crime scene. At trial, Appellant admitted that 
the watch found at the crime scene belongs to him. Deseree and LaTonya Mollice 
testified that Appellant admitted to the murder during a conversation with them 
on a speaker phone. Furthermore, Pope’s testimony was corroborated by several 
witnesses that were sleeping at Barry’s home on the night of the murder.
        On 
the night of the killing, several minors spent the night at Barry’s house, 
most of whom slept on the living room floor and awoke when the shooting ensued. 
Steven DeWayne Hardeman, the best friend of Barry’s son, testified that he was 
sleeping on the living room floor when a man wearing a red pullover sweater with 
a hood and carrying a gun came in the front door. Hardeman saw the man holding a 
gun and wrestling with Barry just before he heard gunshots and put his head 
under the covers in fear. Dashon Lorenzo Fleeks, Barry’s nephew, was also at 
Barry’s house when the killing occurred. Fleeks testified that one of the men 
wore a red sweater. Kortlan Raddan McGee testified that as he was sleeping on 
Barry’s living room floor, he was awakened by gunshots and saw a man wearing a 
“red top.” Tony DeWayne Pendleton testified that one of the two people who 
came into the house “had on all red . . . like a sweat suit thing.”
        Houston, 
Pope’s girlfriend at the time of the incident, also testified at trial. 
According to Houston, Pope came to her house three times during the early 
morning hours of June 10th and appeared nervous each time. The following day, 
she found a red sweatshirt and a blue Georgetown jersey in her trash can. 
Suspecting the clothes had something to do with Barry’s murder, Houston called 
the police department. DNA evidence revealed the presence, with mathematical 
certainty, of blood belonging to both the victim and Appellant on the red 
sweatshirt. Therefore, regardless of whether Pope had reason to lie, our review 
of the record reveals sufficient evidence apart from Pope’s testimony that 
tends to connect Appellant with the murder.
        Having 
carefully examined the evidence in a neutral light, including the evidence 
relevant to and supportive of Appellant’s sufficiency of the evidence 
arguments on appeal, we hold that the proof of Appellant's guilt is not so weak 
as to undermine confidence in the jury's verdict. Further, we hold that the 
evidence of Appellant's guilt is not outweighed by contrary proof and that his 
conviction for capital murder is supported by factually sufficient evidence. We 
overrule Appellant’s first issue.
Motion for New Trial
        Appellant 
argues in his second issue that the trial court erred in failing to grant his 
second motion for new trial because Smith’s written statement asserting 
Appellant’s innocence constitutes material evidence discovered after the 
trial. The trial court has discretion to decide whether to grant a new trial 
based upon newly discovered evidence, and its ruling will not be reversed absent 
an abuse of discretion. Keeter v. State, 74 S.W.3d 31, 37 (Tex. Crim. 
App. 2002). Likewise, the trial judge determines the credibility of the 
witnesses and whether the new evidence is probably true. Id. Motions for 
new trial based on newly discovered evidence traditionally lack favor with the 
courts and are viewed with great caution. Drew v. State, 743 S.W.2d 207, 
225-26 (Tex. Crim. App. 1987), cert. denied, 512 U.S. 1266 (1994). We do 
not substitute our judgment for that of the trial court. Salazar v. State, 
38 S.W.3d 141, 148 (Tex. Crim. App.), cert. denied, 534 U.S. 855 (2001). 
Rather, we decide whether the trial court's decision was arbitrary or 
unreasonable. Id. A trial court’s denial of a motion for new trial is 
arbitrary or unreasonable if the record reflects that: (1) the newly discovered 
evidence was unknown to the movant at the time of trial; (2) the movant's 
failure to discover the evidence was not due to his want of diligence; (3) the 
evidence is admissible and not merely cumulative, corroborative, collateral, or 
impeaching; and (4) the evidence is probably true and would probably bring about 
a different result in another trial. Keeter, 74 S.W.3d at 36-37; Moore 
v. State, 882 S.W.2d 844, 849 (Tex. Crim. App. 1994), cert. denied, 
513 U.S. 1114 (1995).
        The 
Texas Court of Criminal Appeals has recognized the right of the accused to have 
compulsory process for obtaining witnesses as guaranteed by the Sixth Amendment 
and incorporated in the due process clause of the Fourteenth Amendment. See 
Coleman v. State, 966 S.W.2d 525, 527-28 (Tex. Crim. App. 1998) (recognizing 
the defendant's right to compulsory process in order to obtain the attendance 
and testimony of witnesses favorable to his defense) (op. on reh’g); Norman 
v. State, 588 S.W.2d 340, 343 (Tex. Crim. App. [Panel Op.] 1979) (concluding 
that the trial court committed constitutional error in failing to grant the 
defendant's request for immunity for a State informant in order to compel the 
informant's testimony in support of his defense), cert. denied, 446 U.S. 
909 (1980). However, in a criminal prosecution, the accused’s right to 
compulsory process under the Sixth Amendment does not override a witness’ 
Fifth Amendment privilege against self-incrimination. Bridge v. State, 
726 S.W.2d 558, 567 (Tex. Crim. App. 1986); Suarez v. State, 31 S.W.3d 
323, 329 (Tex. App.—San Antonio 2000, no pet.).
        The 
San Antonio Court of Appeals recognized this principle when it addressed an 
issue very similar to the case at hand in Suarez v. State. 31 S.W.3d at 
329. In that case, George Suarez and Trinidad Riojas were charged with burglary 
of a habitation. Suarez wanted to call Riojas as a witness to establish that 
Riojas acted alone in committing the burglary. Id. at 328. Suarez 
contended that Riojas did not have the right to invoke his Fifth Amendment 
privilege because there were no pending charges against him and he had already 
pled guilty to the underlying offense. Id. at 329. The San Antonio Court 
of Appeals held that because Riojas invoked the privilege on the advice of his 
attorney, the trial court was not required to make any further determination 
regarding whether Riojas validly asserted the privilege. Id. The court 
additionally noted that even when a co-defendant has pled guilty and been 
sentenced in connection with the offense, he may still properly invoke his Fifth 
Amendment privilege against self-incrimination, because if his testimony 
contradicts any previous judicial admissions, he could be subject to the charge 
of perjury. Id.
        Appellant 
attempts to distinguish the facts of his case, arguing that Smith was not in 
jeopardy of being charged with perjury. Appellant concedes that there is a 
conflict between Smith’s statements to the police and the statements he made 
in his affidavit, but contends that the inconsistencies do not constitute 
perjury because Smith’s statements to the police were not under oath. 
Appellant argues that because Smith was not in jeopardy of being charged with 
perjury, he could be compelled to testify just like any other witness.
        We 
agree with the San Antonio Court of Appeals and other Texas courts that have 
held that once a trial court learns that a witness has been advised by his 
attorney to invoke his Fifth Amendment privilege, it is relieved of the 
obligation to inquire further as to whether the assertion of the privilege is 
valid. Ross v. State, 486 S.W.2d 327, 328 (Tex. Crim. App. 1972); Suarez, 
31 S.W.3d at 329; Castillo v. State, 901 S.W.2d 550, 552-53 (Tex. 
App.—El Paso 1995, pet. ref’d); Chennault v. State, 667 S.W.2d 299, 
302 (Tex. App.—Dallas 1984, pet. ref’d).
        Thus, 
whether Smith would be subject to perjury charges or any other harm is not 
relevant. Smith was advised by his attorney to invoke his Fifth Amendment 
privilege. Therefore, we, like the trial court, do not address whether the 
privilege was validly asserted and conclude that the trial court did not abuse 
its discretion in denying Appellant’s second motion for new trial. We overrule 
Appellant’s second issue.
Conclusion
        Having 
overruled both of Appellant’s issues, we affirm the trial court’s judgment.
  
  
                                                                  DIXON 
W. HOLMAN
                                                                  JUSTICE
  
 
PANEL 
F:   LIVINGSTON, HOLMAN, and WALKER, JJ.
 
WALKER, J. concurs without 
opinion.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: April 8, 2004